IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.

MICHAEL MEJIAS GARCIA, DYONNE DIAZ, and
HOUSING OPPORTUNITIES PROJECT FOR
EXCELLENCE, INC.

    Plaintiffs,

v.

FANNY LICHTER REVOCABLE TRUST d/b/a
ROYAL HOUSE APARTMENTS, and ELINA
HERNANDEZ

    Defendants.
_____/

## **COMPLAINT**

COMES NOW, Plaintiffs, MICHAEL MEJIAS GARCIA and DYONNE DIAZ and HOUSING OPPORTUNITIES PROJECT FOR EXCELLENCE, INC. and sues for Declaratory Judgment, Permanent Injunctive Relief and Damages against Defendants FANNY LICHTER REVOCABLE TRUST d/b/a ROYAL HOUSE APARTMENTS, and ELINA HERNANDEZ, and states as follows:

1. This is an action for declaratory judgment, permanent injunctive relief, and damages for discrimination on the basis of familial status in the rental of housing. Defendants have engaged in a pattern or practice of conduct with the purpose and the effect of discriminating against families. This action arises under the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601 et seq. (The "Fair Housing Act").

### **Jurisdiction and Venue**

2. Jurisdiction is conferred on this Court by 42 U.S.C. §3613, and §3617, 28 U.S.C. §1331, 28 U.S.C. §2201-2202, and 28 U.S.C. §1343.

Case 1:19-cv-22937-BB   Document 1   Entered on FLSD Docket 07/16/2019   Page 2 of 15

MEJIAS and DIAZ v. ROYAL HOUSE APARTMENTS, et al.
COMPLAINT
Page 2 of 15

3. Venue is proper in this District under 28 U.S.C. § 1391 as this is the district in which the events giving rise to the Plaintiff' claims occurred and as this is an action which is not founded solely on diversity of citizenship.

**PARTIES**

*Plaintiffs*

4. The Plaintiff, MICHAEL MEJIAS GARCIA and DYONNE DIAZ, are the parents of an infant, A.M., and presently live in Miami-Dade County, FL and both Plaintiffs are otherwise sui juris.

5. The Plaintiff, HOUSING OPPORTUNITIES PROJECT FOR EXCELLENCE, INC. (hereinafter HOPE), is a private, Florida not-for-profit, 501 (c) 3 corporation established in 1988, one of three in Florida dedicated to eliminating housing discrimination and promoting fair housing. HOPE employs a three-tiered system of private enforcement, education outreach and counseling to achieve its mission to affirmatively further fair housing. Its programs are designed to ensure that people are offered the right to select housing of their choice without discrimination based on race, religion, color, national origin, sex, disability, marital or familial status, or such other protected classes as may be conferred by federal, state or local laws. HOPE is the only private not-for-profit fair housing organization in Miami-Dade and Broward Counties engaged in testing for fair housing law violations, and pursuing enforcement of meritorious claims.

6. Throughout Miami-Dade and Broward Counties, HOPE engages in activities to identify barriers to fair housing practices, including practices that discriminate against persons because of familial status. As part of its mission to uncover housing discrimination, HOPE expends its resources to train and deploy testers - individuals who, without an intent to rent or purchase a home or apartment, pose as a renter or purchaser for the purpose of collecting

Case 1:19-cv-22937-BB   Document 1   Entered on FLSD Docket 07/16/2019   Page 3 of 15

MEJIAS and DIAZ v. ROYAL HOUSE APARTMENTS, et al.
COMPLAINT
Page 3 of 15

evidence of discriminatory housing practices.

### *Defendants*

7. Defendant FANNY LICHTER REVOCABLE TRUST d/b/a ROYAL HOUSE APARTMENTS (hereinafter ROYAL HOUSE), owns a multi-family apartment development of thirty-three units, located at 4410 West Flagler Street, in Miami, Florida.

8. The Defendant, ELINA HERNANDEZ is an employee of ROYAL HOUSE as a manager of the ROYAL HOUSE property and all of her actions were in the course and scope of her employment with ROYAL HOUSE.

9. The Fair Housing Act was amended in 1988 to prohibit, *inter alia,* housing practices that discriminate on the basis of familial status. 42 U.S.C. §§. 3601-19. "Familial status," as relevant to this case, is defined by the Act as "one or more individuals (who have not attained the age of eighteen years) being domiciled with ... (1) a parent or another person having legal custody of such individual or individuals. *Id.* at § 3602(k); 24 C.F.R. § *100.20.*

### ***MICHAEL MEJIAS GARCIA and DYONNE DIAZ***

Plaintiffs, MICHAEL MEJIAS GARCIA and DYONNE DIAZ, were at all times qualified to rent at ROYAL HOUSE.

10. On May 1, 2017, MICHAEL MEJIAS GARCIA and DYONNE DIAZ initially sought residency at ROYAL HOUSE for two people in a one-bedroom apartment and entered into a Lease Agreement with ROYAL HOUSE for one year until April 30, 2018.

11. Mr. MEJIAS and Ms. DIAZ agreed to the following rules and regulations of ROYAL HOUSE, originally written in Spanish, as a part of their Lease Agreement:

   a. *No se permiten visita durmiendo por la noche en su apartamento*

   **Translation**: Visitors are not allowed to sleep in your apartment at night.

Case 1:19-cv-22937-BB   Document 1   Entered on FLSD Docket 07/16/2019   Page 4 of 15

MEJIAS and DIAZ v. ROYAL HOUSE APARTMENTS, et al.
COMPLAINT
Page 4 of 15

    b. *No se permiten la visita en los balcones, picina ni en las areas comunes*

**Translation**: Visitors are not allowed on the balconies, pool or common areas.

    c. *No se permiten conversaciones telefonicas en el cuarto de lavanderia ni en las areas communes en el interior del edificio*

**Translation**: Telephone conversations are not allowed in the laundry room or in the common areas inside the building.

    d. *No se permite menores de edad solos en los pasillos ni areas comunes*

**Translation**: Children are not allowed alone in the corridors or common areas.

12. Sometime in March 2018, DYONNE DIAZ, A.M. was conceived.

13. On May 1, 2018, MICHAEL MEJIAS GARCIA and DYONNE DIAZ renewed their Lease Agreement with ROYAL HOUSE until April 30, 2019.

14. While Ms. DIAZ was pregnant and showing, Mr. MEJIAS approached Ms. ELINA HERNANDEZ, manager for ROYAL HOUSE, sometime between October and December of 2018 about the addition of their child to the household. In response, Ms. HERNANDEZ was upset that Mr. MEJIAS and Ms. DIAZ did not tell them Ms. DIAZ was pregnant.

15. Ms. HERNANDEZ advised that there were no available apartments to lease to Mr. MEJIAS and Ms. DIAZ when their current lease expired -- including their current unit.

16. The reason Ms. HERNANDEZ gave for refusing to renew Mr. MEJIAS and Ms. DIAZ's lease, four months prior to their lease's expiration, was that the owner of ROYAL HOUSE, Ms. LICHTER, wanted to extensively renovate the apartment, including the kitchen and bedroom.

17. Mr. MEJIAS inquired whether it was possible for him and his wife, Ms. DIAZ, to stay in a hotel during the renovation, which was said to take only three days. Ms. HERNANDEZ

Case 1:19-cv-22937-BB   Document 1   Entered on FLSD Docket 07/16/2019   Page 5 of 15

MEJIAS and DIAZ v. ROYAL HOUSE APARTMENTS, et al.
COMPLAINT
Page 5 of 15

said that the owner was not willing to do that. Additionally, Ms. HERNANDEZ stated that three people were not allowed to live in a one-bedroom apartment.

18. On December 30, 2018, MICHAEL MEJIAS GARCIA and DYONNE DIAZ had their baby, A.M.

19. In May 2019, Mr. MEJIAS and Mrs. DIAZ were forced to move into another apartment complex because they were unable to renew their lease agreement or find another unit to live in with ROYAL HOUSE.

20. The stress of moving apartments led MICHAEL MEJIAS GARCIA and DYONNE DIAZ to extreme stress and worry, and caused Ms. DIAZ to stop breastfeeding her child due to the stress and anxiety.

21. Immediately after this incident, Mr. MEJIAS was referred to HOPE to complain about this discriminatory housing practice.

*Housing Opportunities Project for Excellence*

22. In response to Mr. MEJIAS's denial of housing, HOPE commenced an investigation to determine if the practices of ROYAL HOUSE are discrimination based on familial status.

23. HOPE sent two testers to ROYAL HOUSE on May 23, 2019. Tester 1 is a single woman with one child and Tester 2 is a married woman with no children.

24. Tester 1 met with Ms. HERNANDEZ at approximately 10:30 AM, and in the visit, Tester 1 was advised that there were no one-bedroom apartments currently available, but that there was at least one two-bedroom apartment available for $1,500. Ms. HERNANDEZ asked how many people would be living in the apartment and Tester 1 replied that it would be her and her daughter.

Case 1:19-cv-22937-BB   Document 1   Entered on FLSD Docket 07/16/2019   Page 6 of 15

MEJIAS and DIAZ v. ROYAL HOUSE APARTMENTS, et al.
COMPLAINT
Page 6 of 15

25. Ms. HERNANDEZ proceeded to tell Tester 1 about the rules of the apartment:

a) Babysitters were not allowed on the property and that the tester's daughter would need to be placed in a daycare or in the hands of a babysitter not at the property when the tester was not at home.

b) No talking on the phone while she was in the hallway

c) Tenants 14 years old or older would be allowed in the pool

d) Visitors are not permitted to stay overnight.

26. Tester 2 met with Ms. HERNANDEZ at approximately 11:40 AM, and in the visit, Tester 2 was advised that there were no one-bedroom apartments currently available, but that there was at least one two-bedroom apartment available for $1,500 with a $900 deposit. Ms. HERNANDEZ additionally inquired into how many people would be living with Tester 2. Tester 2 was not advised about the limitations on visitors, pool use, or telephones.

27. HOPE engaged another tester, Tester 3, on May 29, 2019 to test ROYAL HOUSE – a married woman with no children.

28. Tester 3 met with Ms. HERNANDEZ at approximately 11:40 AM, and in the visit, the tester was advised that there one-bedroom apartment would be available for July, but that there was at least one two-bedroom apartment available at that time for $1,300 with a $900 deposit. Ms. HERNANDEZ additionally inquired into how many people would be living with Tester 3.

29. As Ms. HERNANDEZ was showing Tester 3 around the property, Ms. HERNANDEZ pointed out that nobody was outside on property grounds, which made the property very quiet and they wanted to keep it that way.

30. HOPE sent two testers on May 31, 2019 to ROYAL HOUSE. Tester 4 is a single

Case 1:19-cv-22937-BB Document 1 Entered on FLSD Docket 07/16/2019 Page 7 of 15

MEJIAS and DIAZ v. ROYAL HOUSE APARTMENTS, et al.
COMPLAINT
Page 7 of 15

woman with no children, and Tester 5 is a single woman with one child.

31. Tester 4 met with Ms. HERNANDEZ at approximately 10:30 AM, and in the visit, the tester was advised that no units were available at that time, neither one or two-bedroom apartments, but that a two-bedroom could be available in June or July. Ms. HERNANDEZ told Tester 4 that rent for a two-bedroom was $1,200 with an $800 deposit. Ms. HERNANDEZ additionally inquired into how many people would be living with Tester 4.

32. Tester 4 then stated that she had a granddaughter, and whether she could use the pool. Ms. HERNANDEZ said sure, but she has to be supervised by one of her parents at the pool, and no babysitters were allowed in the complex. She then stated that Tester 4 could not talk on the phone outside of her apartment and visitors were not permitted overnight. Ms. HERNANDEZ told Tester 4 that, as she could see, nobody is outside, it's very quiet and she would like to keep it like that.

33. Tester 5 met with Ms. HERNANDEZ at approximately 1:00 PM, and in the visit, the tester was advised that no units were available at that time, neither one or two-bedroom apartments, but that a two-bedroom would be available August 1st. Ms. HERNANDEZ additionally inquired into how many people would be living with Tester 5. Ms. HERNANDEZ advised her that her child could not use the pool, and only people 14 years or older could use the pool.

34. Afterwards, Ms. HERNANDEZ told Tester 5 that rent for a two-bedroom was $1,500 with a $900 deposit, a significant deviation from the price given just a few hours earlier to Tester 4, who had no children.

35. From the tests, it was clear that there were apartments available for Mr. MEJIAS, Ms. Diaz, and their infant, A.M.

Case 1:19-cv-22937-BB   Document 1   Entered on FLSD Docket 07/16/2019   Page 8 of 15

MEJIAS and DIAZ v. ROYAL HOUSE APARTMENTS, et al.
COMPLAINT
Page 8 of 15

36. Defendants maintained rules and made statements that indicates a preference for families without children, including, but not limited to:

    a. Maintaining a policy that limits children in the corridors or common areas of the facility;

    b. Maintaining a policy that prohibits children under 14 from going into the swimming pool.

    c. Advising that babysitters were not allowed on the property and that the tester's daughter would need to be placed in a daycare or in the hands of a babysitter not at the property when the tester was not at home.

    d. Advising only families with children that visitors and babysitters were not permitted.

    e. Advising prospective residents that a quiet environment was preferred.

    f. Charging more money for families with children than with no children.

    g. Counting a child under 24 months old as an additional occupant and thus disqualifying a married couple with a child from living in a one-bedroom apartment.

37. Defendants' actions described above constitute a pattern, practice, and policy of housing discrimination on the basis of familial status. In engaging in such activities, Defendants have acted intentionally or recklessly violated Plaintiffs' civil rights and damaged the rights and feelings of Plaintiffs MEJIA, DIAZ and their child, A.M.

38. Defendants continue to engage in the unlawful acts and the pattern or practice of discrimination described above. Plaintiffs have no adequate remedy at law. Plaintiffs are now suffering and will continue to suffer irreparable injury from defendants' acts and pattern or

Case 1:19-cv-22937-BB   Document 1   Entered on FLSD Docket 07/16/2019   Page 9 of 15

MEJIAS and DIAZ v. ROYAL HOUSE APARTMENTS, et al.
COMPLAINT
Page 9 of 15

practice of discrimination based on familial status unless this Court provides further relief.

39. As a result of Defendants' actions described above, Plaintiffs MEJIA, and DIAZ suffer and continue to suffer irreparable loss and injury including, but not limited to humiliation, embarrassment, emotional distress, and deprivation of their right to equal housing opportunities regardless of familial status.

40. In support of its goals, HOPE engages in a variety of educational, counseling and referral services, as well as community monitoring activities. The Education and Outreach Program offers to housing industry providers, Condominium and Home Owner Association, public housing authorities and not-for-profit Community Development Corporations, the most current information and technical assistance necessary to fully comply with fair housing laws, consent decrees, enforcement agreements, Community Reinvestment Act regulations and affirmative marketing requirements.

41. HOPE's time and scarce resources have been severely diverted and its mission frustrated in order to address the allegations outlined in this complaint, and has resulted in expenditures which should have been used to affirmatively further fair housing without the cost of litigation.

42. HOPE has been, and continues to be, adversely affected by the discriminatory acts, policies, and practices of the Defendants.

43. As a result of the acts and conduct of the Defendants, Plaintiff HOPE has suffered and continues to suffer interference with its mission, diversion of its resources and obstruction of its purpose of ensuring equal housing opportunities throughout South Florida free from familial status discrimination. Plaintiff HOPE has been, and continues to be adversely affected by the acts, policies, and practices of the Defendants and/or their agents.

Case 1:19-cv-22937-BB   Document 1   Entered on FLSD Docket 07/16/2019   Page 10 of 15

MEJIAS and DIAZ v. ROYAL HOUSE APARTMENTS, et al.
COMPLAINT
Page 10 of 15

44. Defendants' discriminatory actions have (1) interfered with the efforts and programs of HOPE which are intended to bring about equality of opportunity for all persons regardless of familial status; (2) forced HOPE to devote scarce resources to identify and counteract Defendants' unlawful housing practices and to otherwise divert those same resources from its education, counseling, and referral services; (3) interfered with the right of HOPE's constituents to enjoy the benefits of living in a community which does not discriminate against persons based on familial status; and, (4) frustrated HOPE's mission and purpose of promoting the equal availability of housing to all persons without regard to race, color, religion, gender, national origin, familial status, pregnancy or disability.

45. Any other conditions precedent to the filing of this action have been satisfied, or have been waived.

46. The Plaintiffs have retained the Disability Independence Group, Inc., and have agreed to pay them a reasonable fee for their services.

## COUNT I

## VIOLATION OF THE FAIR HOUSING ACT DENIAL OF RENTAL OPPORTUNITIES

47. The Plaintiff re alleges and incorporates by reference paragraphs 1 through 46 as if alleged herein.

48. On September 13, 1988 Congress amended the Fair Housing Act to prohibit, *inter alia*, housing practices that discriminate on the basis of familial status. 42 U.S.C. §§ 3601 et seq. In amending the Act, Congress recognized that "families with children are refused housing despite their ability to pay for it." H.R. Rep. No. 711, 100th Cong., 2nd Sess. (1988). In addition, Congress cited a HUD survey that found 25% of all rental units exclude children and that 50% of all rental units have policies that restrict families with children in some way. *See*

Case 1:19-cv-22937-BB   Document 1   Entered on FLSD Docket 07/16/2019   Page 11 of 15

MEJIAS and DIAZ v. ROYAL HOUSE APARTMENTS, et al.
COMPLAINT
Page 11 of 15

Marans, *Measuring Restrictive Rental Practices Affecting Families With Children: A National Survey*, Office of Policy, Planning and Research, HUD, (1980). The HUD survey also revealed that almost 20% of families with children were forced to live in less desirable housing because of restrictive policies. Congress recognized these problems and sought to remedy them by amending the Fair Housing Act to make families with children a protected class.

49. The Defendants violated the Act by refusing to rent, after the making of a bona fide offer, or refusing to negotiate for the rental of, or otherwise made unavailable or denied, a dwelling based upon familial status, which is prohibited by the statute that is codified at 42 U.S.C. § 3604(a) and the regulations that are found at 24 CFR §§ 100.60.

50. The specific regulations under § 100.60 that these actions violate are as follows:

    a. Using different qualification criteria or applications or sale or rental standards or procedures…, because of … familial status.

    b. Evicting tenants because of their … familial status.

51. Defendants' actions were done in knowledge of the unlawfulness of their acts and in total and reckless disregard of Plaintiff's rights.

52. As a result of Defendants' actions described above, Plaintiffs MICHAEL MEJIAS GARCIA and DYONNE DIAZ, suffers and continues to suffer irreparable loss and injury including, but not limited to humiliation, embarrassment, emotional distress, and deprivation of her rights to equal housing opportunities regardless of familial status.

WHEREFORE, Plaintiffs, MICHAEL MEJIAS GARCIA and DYONNE DIAZ, demand judgment against FANNY LICHTER REVOCABLE TRUST d/b/a ROYAL HOUSE APARTMENTS, and ELINA HERNANDEZ, for appropriate compensatory and punitive damages and an award of attorneys' fees and costs, and grant any other such relief as this Court

Case 1:19-cv-22937-BB   Document 1   Entered on FLSD Docket 07/16/2019   Page 12 of 15

MEJIAS and DIAZ v. ROYAL HOUSE APARTMENTS, et al.
COMPLAINT
Page 12 of 15

deems just and equitable.

## COUNT II
## VIOLATION OF THE FAIR HOUSING ACT DISCRIMINATORY PUBLICATIONS

53. The Plaintiffs reallege and incorporate by reference paragraphs 1 through 46 as if alleged herein.

54. By promulgating discriminatory occupancy standards for renting and by imposing additional rules, conditions, and differing rent at ROYAL HOUSE on the basis of familial status, the Defendants violated the Act by making, printing or publishing, or causing to be made, printed or published statements and advertisements, with respect to the rental or sale of a dwelling that indicated a preference, limitation, or discrimination based on familial status.

55. As a result of the acts and conduct of the defendants, Plaintiff HOPE has suffered and continues to suffer interference with its mission, diversion of its resources and obstruction of its purpose of ensuring equal housing opportunities throughout South Florida free from discrimination. Plaintiff HOPE has been, and continues to be adversely affected by the acts, policies, and practices of the Defendant and/or their agents.

56. In addition, as described above, Plaintiff, HOPE has sponsored, promoted and organized numerous educational programs in both Broward and Dade Counties. Said programs were funded and established in order to stop current housing discrimination and future housing discrimination. Defendants' discriminatory actions have frustrated Plaintiff's HOPE'S goal of promoting equality, nullified Plaintiff, HOPE'S numerous educational programs, and have forced Plaintiff, HOPE to continue funding educational programs that would not have been necessary in the absence of Defendants' discriminatory actions.

57. Additionally, Plaintiff HOPE has been forced to perform "testing" at Defendants'

Case 1:19-cv-22937-BB   Document 1   Entered on FLSD Docket 07/16/2019   Page 13 of 15

MEJIAS and DIAZ v. ROYAL HOUSE APARTMENTS, et al.
COMPLAINT
Page 13 of 15

properties in order to discover and document Defendants' discriminatory actions.

58. As a result, the described discriminatory actions undertaken by all named Defendants have injured Plaintiff, HOPE by (a) interfering with the efforts and programs of Plaintiff HOPE which were intended to bring about equality of opportunity to minorities and others in housing; (b) forced HOPE to devote scarce resources to identify and counteract defendant's unlawful housing practices; and (c) interfered with the rights of HOPE's constituents in both Dade and Broward counties from enjoying the benefits of living in an integrated community and thereby frustrating HOPE's mission and purpose.

59. As a result of Defendants' actions described above, Plaintiffs MICHAEL MEJIAS GARCIA and DYONNE DIAZ, suffers and continues to suffer irreparable loss and injury including, but not limited to humiliation, embarrassment, emotional distress, and deprivation of her rights to equal housing opportunities regardless of familial status.

60. Defendants' actions were done in knowledge of the unlawfulness of their acts and in total and reckless disregard of Plaintiffs' rights.

WHEREFORE, Plaintiffs, MICHAEL MEJIAS GARCIA and DYONNE DIAZ, and HOUSING OPPORTUNITIES PROJECT FOR EXCELLENCE, INC., demand judgment against FANNY LICHTER REVOCABLE TRUST d/b/a ROYAL HOUSE APARTMENTS, and ELINA HERNANDEZ to enjoin Defendants from discriminating against Plaintiffs herein, and preventing discrimination in all of their premises in the future as follows:

a. That the Court declare that the actions of the Defendants violated the Fair Housing Amendments Act by discriminating against tenants and prospective tenants by publishing discriminatory requirements and materials based on familial status;

Case 1:19-cv-22937-BB   Document 1   Entered on FLSD Docket 07/16/2019   Page 14 of 15

MEJIAS and DIAZ v. ROYAL HOUSE APARTMENTS, et al.
COMPLAINT
Page 14 of 15

b. That the Court enjoin Defendants from discriminating against Plaintiffs or any other person, because of their familial status;

c. An award of appropriate compensatory and punitive damages to Plaintiff HOUSING OPPORTUNITIES PROJECT FOR EXCELLENCE, INC. and against Defendants to compensate it for the drain on its resources that can be reasonably attributed and the frustration of HOPE's purpose of enforcing the Fair Housing laws in Florida and to educate the public to combat the effects of the discrimination perpetrated to such victims of housing discrimination;

e. An award of appropriate compensatory and punitive damages to Plaintiffs MICHAEL MEJIAS GARCIA and DYONNE DIAZ.

f. That the Court declare that the Defendants' acts were willful and wanton and in reckless disregard of the Plaintiffs' civil rights under law;

g. Order Defendants to provide a notice to all tenants with children for all buildings owned and/or controlled by the Defendants, their rights under the Fair Housing Act;

h. Order that the Defendants instruct all of its employees, agents, independent contractors and/or other persons who deal with the rental or management of any and all housing currently owned, managed and/or controlled by Defendants, of the terms of the Court's Order and the Fair Housing Act, and implementing regulations.

i. Order that the Defendants shall maintain for inspection by Plaintiffs and all other tenants at its rental offices, copies of the Fair Housing Act, Fair Housing Amendments Act and implementing regulations.

j. Find that Plaintiffs are entitled to an award of attorneys' fees and costs,

k. And grant any other such relief as this Court deems just and equitable.

THE PLAINTIFFS, DEMAND A JURY TRIAL FOR ALL SUCH ISSUES SO TRIABLE IN THIS MATTER.

Dated 16th day of July 2019.

By: */s/ Matthew W. Dietz*
Matthew W. Dietz, Esq.
Florida Bar No.: 0084905
DISABILITY INDEPENDENCE GROUP, INC.
2990 Southwest 35th Avenue
Miami, Florida 33133
T: (305) 669-2822 / F: (305) 442-4181
E-Mail: mdietz@justdigit.org
aa@justdigit.org